**TREEHOUSE LAW, LLP**
Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307473)
Joshua Nassir (SBN 318344)
10250 Constellation Blvd., Suite 100
Los Angeles, CA 90067
Telephone: (310) 751-5948
bheikali@treehouselaw.com
rglezakos@treehouselaw.com
jnassir@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anna Stock, individually and on behalf of all others similarly situated, | CASE NO.:  2:23-cv-05113 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| Macy's Merchandising Group, Inc. and Macy's, Inc. | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Anna Stock ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Macy's Merchandising Group, Inc. and Macy's Inc. ("Defendants"), based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

## SUMMARY OF THE ACTION

1.     This class action seeks to challenge Defendants' false and deceptive practices in the labeling, marketing and sale of its Oake brand "100% Cotton" Comforters, Coverlets, Quilts, Duvets, and Shams (the "Product(s)"[1]).

2.     Specifically, the front label of the Products prominently state that the Products are "100% Cotton," indicating that the Products are made solely with cotton.

3.     Unbeknownst to consumers however, the Products are not "100% Cotton" because they contain polyester filling. Indeed, only the cover of the Products is made with cotton.

4.     Plaintiff and other class members purchased the Products and paid a premium price based upon their reliance on Defendants' front label representation that the Products are "100% Cotton." Had Plaintiff and Class members been aware that the Products are not "100% Cotton," Plaintiff and Class members would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members have been injured by Defendants' deceptive business practices.

## PARTIES

5.     Plaintiff Stock is a citizen of California and currently resides in Northridge, California. In or around June 2022, Ms. Stock purchased an Oake "100% Cotton" Comforter Set from Macy's in Northridge, California. Based on the "100% Cotton" representation on the front packaging of the Product, Ms. Stock reasonably believed that the comforter was made entirely of cotton. Had Ms. Stock known the

---

[1] The "Products" are defined further in Paragraph 17 below.

truth about the Product, she would not have purchased it, or would have paid significantly less for it. As such, she (like other consumers), has been financially injured by Macy's conduct alleged herein.

6.     Despite Defendants' misrepresentations, Plaintiff would purchase the Products, as advertised, if they were in fact 100% cotton. Absent an injunction prohibiting Defendants' deceptive advertising, she will be unable to rely with confidence on Defendants' advertising of the Products in the future.

7.     Since Plaintiff lacks knowledge or insight as to Defendants' specific business practices, she will not be able to determine with confidence whether the Products are fully cotton. This leaves doubt in her mind as to the possibility that at some point in the future the Products could be fully cotton. This uncertainty, coupled with her desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the alleged misleading representations. In addition, absent an injunction, other Class members will continue to purchase the Products, reasonably but incorrectly, believing they are 100% cotton.

8.     Defendant Macy's, Inc. is a Delaware corporation with its headquarters in New York City, New York. Defendant is responsible for the design, materials, manufacturing, marketing, labeling, packaging, and sale of the Products in the United States, including in this District.

9.     Defendant Macy's Merchandising Group, Inc. is a New York corporation, subsidiary of Macy's, Inc., and is headquartered in New York City, New York. Its services include conceptualizing, designing, sourcing, and marketing of Macy's private-label and private branded products.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as members of the proposed class are citizens of states different than Defendants' home state; and (3) the amount

in controversy is in excess of $5,000,000, exclusive of interests and costs.

11.     This Court has personal jurisdiction over Defendants because they conduct and transact substantial business in California, and intentionally and purposefully placed the Products into the stream of commerce within California.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased one of the Products in this District.

## FACTUAL BACKGROUND

## I.     The Products Are Falsely Advertised

13.     Macy's is a nationally recognized department store chain with nearly 500 brick-and-mortar stores in the U.S.[2]

14.     In addition to selling the merchandise of some of the nation's leading retail brands, Macy's sells its own private label merchandise under different brand names, including Oake, Charter Club, Hotel Collection, Club Room, and Alfani.

15.     The Macy's private label brand at issue in this case is its Oake brand of bedding and bath products, launched in 2021.

16.     According to Macy's, the Oake brand features "Modern Bedding that's sustainably made."[3] Moreover, "[t]he [Oake] lifestyle line features mindfully made elements and thoughtfully chosen textures…" and is "inspired by the elements in nature[.]"[4]

17.     The specific Oake line products at issue in this Complaint are any and all Oake products, sold at Macy's brick-and-mortar retail stores, which are labeled with the representation "100% Cotton" on the products' front packaging, but which contain polyester filling. The challenged products include, but are not limited to, the following products (collectively, the "Products"):

---

[2] https://www.macysinc.com/investors/financials/store--count/default.aspx.
[3] https://www.macys.com/shop/search?keyword=oake
[4] https://www.macysinc.com/newsroom/news/news-details/2021/Discover-Your-Trademark-Style-With-Macys-Fall-Fashion-09-15-2021/default.aspx

a.  Oake "100% Cotton" Coverlets;

b.  Oake "100% Cotton" Comforter Sets;

c.  Oake "100% Cotton" Shams;

d.  Oake "100% Cotton" Quilts; and

e.  Oake "100% Cotton" Duvet Sets.

18.    Unfortunately for consumers, to capitalize on consumer demand for cotton products (discussed further *infra*), Defendants resort to false and misleading labeling to boost sales of the Products, all at the expense of unsuspecting consumers.

19.    Specifically, the front packaging of the Products feature the prominent claim "100% Cotton." *See examples below.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





CLASS ACTION COMPLAINT

20.     The use of the "100% Cotton" representation on the front packaging of the Products leads reasonable consumers to believe that the Products are made exclusively of cotton, which is a more premium and desirable fabric compared to synthetic fabrics such as polyester.

21.     Despite this unequivocal representation, the Products contain 100% polyester filling. As such, the labeling of the Products as "100% Cotton" is false and misleading.

22.     The belief that the Products are made solely with cotton is material to consumers' purchasing decisions. Cotton is made from the natural fibers of cotton plants. Cotton is known for its comfort and breathability, and for being extremely hypoallergenic. Cotton is also environmentally friendly and biodegradable in natural environments.

23.     In contrast, polyester is a synthetic material made with chemical reactions involving petroleum and coal. From a health perspective, the use of polyester has also been associated with various conditions such as rashes, itching, redness, eczema, dermatitis, allergic reactions, insomnia, headaches, and fatigue. Exposure of polyester fabrics to heat can also release dangerous chemicals such as formaldehyde and other perfluorochemicals (PFCs), which can get absorbed into the skin and increase the risk of cancer and other ailments. Polyester is less breathable than cotton. Lastly, polyester is not environmentally friendly and can take hundreds of years to degrade.

24.     As such, consumers prefer and demand cotton over synthetic materials such as polyester. For these reasons, and to help prevent consumer deception as to the marketing of textiles, including cotton and polyester, the Federal Trade Commission ("FTC") has promulgated detailed regulations and guidelines, which strictly govern the packaging, display, advertising and sale of textiles. As outlined below, Macy's is in violation of those regulations and guidance.

**II.     Defendants' Labeling Violates FTC Regulations and Guidance**

25.     Specifically, the advertising and marketing of the Products, which are considered textile "bedding" products, are subject to the Textile Act and Rules, codified as 16 C.F.R. § 303, *et seq.* (herein the "Textile Act").[5]

26.     Under the Textile Act, "[n]o fiber trademark or generic name shall be used in non-required information on a label in such a manner as to be false, deceptive, or misleading as to fiber content, or to indicate directly or indirectly that a textile fiber product is composed wholly or in part of a particular fiber, when such is not the case." 16 C.F.R. § 303.17(c); *see also* 16 C.F.R. § 303.41(d) (same).

27.     Moreover, under the 16 C.F.R. § 303.16(a), "the combination of required information and non-required information" may not be misleading. Relatedly, under 16 C.F.R. § 303.16(c) "any non-required information or representations placed on the product shall not minimize, detract from, or conflict with required information and shall not be false, deceptive, or misleading."

28.     The FTC provides the following examples of ***compliant*** fiber claims:[6]

"Fine Pima Blend Fabric (Pima Cotton, Upland Cotton)" is permissible in an ad for a product whose label reads "90% Pima Cotton, 10% Upland Cotton."

"Pimalux Towel (Pima Cotton, Upland Cotton)" is permissible in an ad for a towel whose label reads "70% Pima Cotton, 30% Upland Cotton."

29.     The FTC also provides an example of a false and deceptive advertising

---

[5] *See* 16 C.F.R. § 303.45(a)(4) ("beddings" are covered by the Textile Act); 16 C.F.R. § 303.1(k) ("The term beddings means sheets, covers, blankets, comforters, pillows, pillowcases, quilts, bedspreads, pads, and all other textile fiber products used or intended to be used on or about a bed or other place for reclining or sleeping but shall not include furniture, mattresses or box springs.").

[6]   https://www.ftc.gov/business-guidance/resources/calling-it-cotton-labeling-advertising-cotton-products-0

reference to only one type of fiber when the product contains other types of fibers:[7]

> For example, if the required fiber content statement says "70% Pima Cotton, 30% Upland Cotton," the non-required phrase "Pimalux Towel" must not interfere or detract from it, or be false or deceptive by, for example, falsely implying that the towel is 100% Pima Cotton.

30.    Defendants' labeling and advertising of the Products violates the foregoing FTC regulations and guidance. The front label references to "100% Cotton" is an unequivocal representation which conflicts with, detracts from, and/or minimizes from the true fiber content, which is only reflected elsewhere on the non-consumer facing panels of the product packaging. Relatedly, the combination of the non-required information (i.e., "100% Cotton" on the front label) and the required information (i.e., the full fiber content on the non-consumer facing panels of the packaging) is misleading. Lastly, using the phrase "100% Cotton" on the front packaging is a "generic name [] used in non-required information on a label in such a manner as to be false, deceptive, or misleading as to fiber content, or to indicate directly or indirectly that a textile fiber product is composed wholly or in part of a particular fiber, when such is not the case." 16 C.F.R. § 303.17(c).

31.    Lastly, the labeling and advertising of the Products are consistent with the examples of **non-compliant** labeling/advertising provided by the FTC, and inconsistent with the examples of **compliant** labeling/advertising provided by the FTC. *See* Paragraphs 28-29. As opposed to being fully transparent and disclosing the 100% polyester fill on the front packaging of the Products, the front packaging only references cotton by way of the "100% Cotton" representation.

32.    Indeed, competitor comforters and bedding products accurately disclose their full fiber content on the ***front*** packaging. For example, the Sealy Soft and Fluffy Comforter touts the use of "Silky Soft Fabric With Tencel™ Fibers" on the front

---

[7] *Id.*

CLASS ACTION COMPLAINT

packaging, but also includes a full fiber content disclosure on the same front label, including a reference to "100% Polyester Fiber Batting."





CLASS ACTION COMPLAINT

33. Another example is Nestwell Plush Overfilled Cal King Mattress Pad, which prominently represents that it has a "100% Cotton Cover," but also discloses that it is "Overfilled with hypoallergenic polyester." *See image below.*



34. Indeed, Macy's other private label brands, such as Charter Club and Hotel Collection, accurately label their bedding products. For example, Macy's Charter Club Quilts are accurately labeled as "100% Cotton" when they are truly 100% cotton (shell and filling). *See image below.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    35.    Moreover, Macy's Hotel Collection Mattress Pads contain a polyester

17   fill, but accurately disclose on the front label that the product contains a "Polyester

18   Fiberfill" and that only the cover is 100% cotton ("100% Cotton Cover"). *See image*

19   *below.*

20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

### III.   <u>Consumers Reasonably Rely On The Front Packaging of the Products</u>

36.   The Products' front packaging prominently displays the critical marketing information for Defendants' Products. The information on the front packaging is seen by all consumers at the point of purchase because of the way the Products are displayed on shelves. *See example below*.



37.    As such, consumers purchasing the Products reasonably rely on the front packaging of the Products, which only reference cotton, in purchasing the Products.

38.    The average consumer spends only 13 seconds deciding whether to make an in-store purchase[8]; consequently, visual elements heavily influence purchase decision. According to Dr. Mark Lang, professor of marketing at Saint Joseph's University, "[s]hoppers make decisions heuristically—based on shortcuts using inferences and incomplete data. We can't process everything."[9]

39.    Moreover, research indicates that 90% of consumers make a purchase after only visually examining the front of the packaging without physically having the product in their hands.[10]

40.    Indeed, in light of the 50,000 products available in the typical store, "the average package has about one-tenth of a second to make an impression on the shopper." [11]

41.    As such, Plaintiff and other consumers' reliance on the just the front packaging of the Products in purchasing them is reasonable.

## IV.    Defendants' False and Misleading Advertising Has Financially Harmed Consumers

42.    As outlined above, consumers are willing to pay more for the Products based on the belief that the Products are 100% cotton. Plaintiff and other consumers would have paid significantly less for the Products had they known the truth about them. Thus, through the use of false and misleading representations, Defendants command a price that Plaintiff and the Classes would not have paid had they been

---

[8] Randall Beard, *Make the Most of Your Brand's 20-Second Window,* NIELSEN, Jan. 13, 2015, https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window./.

[9] *Package Downsizing Proves That Less Is Not More,* CONSUMER REPORTS https://www.consumerreports.org/cro/magazine/2015/09/packaging-downsizing-less-is-not-more/index.htm (Sep. 24, 2015).

[10] Clement, J., *Visual influence on in-store buying decisions: an eye-track experiment on the visual influence of packaging design*, 23 Journal of Marketing Management, 917−928 (2007).

[11] Allan J. Kimmel, *Psychological Foundations of Marketing,* 90-91 (2d ed. 2018).

fully informed. Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendants' false and deceptive practices, as described herein.

43.     As the entities responsible for the design, manufacturing, advertising, packaging, labeling and sale of the Products, Defendants knew or should have known that the Products are falsely and deceptively advertised as "100% Cotton." Moreover, Defendants knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendants' front packaging and be misled into believing the Products are made solely with cotton.

## CLASS DEFINITION AND ALLEGATIONS

44.     Plaintiff brings this matter on behalf of herself and those similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" or "Rule"), Plaintiff seeks to represent the following class:

> All residents of the United States who purchased any of the Products for personal, family, or household consumption and not for resale within the applicable statute of limitation ("Nationwide Class").

45.     Additionally, as further described herein, Plaintiff brings claims based upon the California consumer protection laws on behalf of the following subclass:

> All residents of California who purchased any of the Products in California for personal, family, or household consumption and not for resale within the applicable statute of limitation ("California Class").

46.     The Nationwide Class and California Class are referred to collectively as the "Class" or "Classes."

47.     Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

48.     The following people and entities are excluded from the Classes: (1) any

CLASS ACTION COMPLAINT

Judge or Magistrate presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

49.     This action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

50.     **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendants' records. At a minimum, there at least thousands of Class members.

51.     **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

      a. Whether Defendants' course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

      b. Whether reasonable consumers would rely on Defendants' "100% Cotton" representation on the Products and reasonably believe the Products contain just cotton;

      c. Whether Defendants knew or should have known their representations were false or misleading;

      d. Whether Defendants were unjustly enriched by retaining monies from the sale of the Products;

      e. Whether certification of each Class is appropriate under Rule 23;

f.  Whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

g.  The amount and nature of the relief to be awarded to the Plaintiff and the Class, including whether Plaintiff and the Class are entitled to punitive damages.

52.    **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products. Plaintiff and the members of the Classes relied on the "100% Cotton" representation made by the Defendants on the Products prior to purchasing them. Plaintiff and the members of each Class paid for Defendants' Products and would not have purchased them, or would have paid substantially less for them, had they known that the Defendants' representation was untrue.

53.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected.

54.    **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' misconduct detailed at length in this Complaint.

55.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which

would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendants.

56. **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendants will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
**(On Behalf of Plaintiff and California Class Members)**

57. Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

58. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice."

59. Defendants' conduct constitutes "unfair," "fraudulent" and "unlawful" business practices, as set forth in Cal. Bus. & Prof. Code § 17200 *et seq.*

60. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendants' advertising of the Products is "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code §

23

17500 *et seq.* ("FAL"), California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), the Textile Act, and all other laws set forth herein.

61.    As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiff and members of the proposed California Class.

62.    Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendants' conduct was of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the promised composition of the Products. Deceiving unsuspecting consumers into believing the Products are solely cotton is of not benefit to consumers. Therefore, Defendants' conduct was "unfair." As a result of Defendants' unfair business acts and practices, Defendants have unfairly obtained money from Plaintiff and members of the proposed California Class.

63.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendants' conduct here was fraudulent because it has the effect of deceiving consumers into believing the Products are 100% cotton, and therefore have no other materials. Because Defendants have misled Plaintiff and members of the California Class, their conduct was "fraudulent." As a result of Defendants' fraudulent business acts and practices, Defendants have fraudulently obtained money from Plaintiff and members of the California Class.

64.    Plaintiff requests that the Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to her, and members of the proposed California Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of

the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

## SECOND CLAIM
### Violation of California's False Advertising Law,
### Cal. Bus. & Prof. Code § 17500 *et seq.*
### (On Behalf of Plaintiff and California Class Members)

65.    Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

66.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

67.    Defendants have represented to the public, including Plaintiff and members of the proposed California Class, through their deceptive labeling, that the Products are 100% cotton. However, this representation is false and misleading because the Products are filled with 100% polyester. Because Defendants have disseminated misleading information regarding the Products, and Defendants know, knew, or should have known through the exercise of reasonable care that the representation is false and misleading, Defendants have violated the FAL.

68.    As a result of Defendants' misleading advertising, Defendants have unlawfully obtained money from Plaintiff and members of the California Class. Plaintiff therefore requests that the Court cause Defendants to restore this fraudulently obtained money to her and members of the proposed California Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably

harmed and/or denied an effective and complete remedy.

## THIRD CLAIM
### Violation of California's Consumers Legal Remedies Act,
### Cal. Civ. Code § 1750 *et seq.*
### (On Behalf of Plaintiff and California Class Members)

69. Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

70. The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

71. The Products are "good[s]" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

72. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By representing that the Products are "100% Cotton" on the front label of the Products, Defendants have represented that the Products contain certain characteristics and quantities that they do not have. Therefore, Defendants have violated section 1770(a)(5) of the CLRA.

73. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By representing that the Products are "100% Cotton" on the front label of the Products, Defendants have represented that the Products are of a particular standard (i.e., containing 100% cotton) that they do not meet. Therefore, Defendants have violated section 1770(a)(7) of the CLRA.

74. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By representing that the Products are "100% Cotton" on the front label of the Products, Defendants have represented the Products with characteristics it intended not to provide to consumers. As such,

CLASS ACTION COMPLAINT

Defendants have violated section 1770(a)(9) of the CLRA.

75.     At all relevant times, Defendants have known or reasonably should have known that the front packaging cotton representation is false and misleading, or likely to mislead reasonable consumers, and that Plaintiff and other members of the California Class would reasonably and justifiably rely on the representation when purchasing the Products. Nonetheless, Defendants deceptively advertised the Products as such in order to deceive consumers into believing the Products are fully cotton.

76.     Plaintiff and members of the California Class have justifiably relied on Defendants' false and misleading representation when purchasing the Products. Moreover, based on the materiality of Defendants' false and deceptive labeling, reliance may be presumed or inferred for Plaintiff and members of California Class.

77.     Plaintiff and members of the California Class have suffered injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them.

78.     Under Cal. Civ. Code § 1782, on February 1, 2023, Plaintiff, through her counsel, sent Defendants a notice letter through certified mail, notifying Defendants of their violations under the CLRA (as well as other statutes and laws). On February 6, 2023, Defendants received Plaintiff's CLRA notice letter. Plaintiff's counsel gave Defendants an opportunity to cure, consistent with Cal. Civ. Code § 1782. More than 30 days have passed since Defendants' receipt of the notice letter, yet Defendants have not cured their false and deceptive conduct on a class-wide basis. As such, Plaintiff seeks damages under the CLRA, as well all other available remedies.

**FOURTH CLAIM**
**Breaches of Express Warranty**
**Cal. Com. Code § 2313**
**(On Behalf of Plaintiff and California Class)**

79.     Plaintiff repeats the allegations contained in paragraphs 1-56 above as if

1   fully set forth herein.

2       80.    California's express warranty statutes provide that "(a) Any affirmation

3   of fact or promise made by the seller to the buyer which relates to the goods and

4   becomes part of the basis of the bargain creates an express warranty that the goods

5   shall conform to the affirmation or promise," and "(b) Any description of the goods

6   which is made part of the basis of the bargain creates an express warranty that the

7   goods shall conform to the description." Cal. Com. Code § 2313.

8       81.    Defendants have expressly warranted on the Products' front labeling that

9   the Products are "100 Cotton," which is an unequivocal representation that the

10  Products are pure cotton and contain no other materials. However, as alleged herein,

11  this express representation is false because the Products contain filling made entirely

12  of polyester.

13      82.     The "100% Cotton" representation on the Products' front labels are: (a)

14  an affirmation of fact or promise made by Defendants to consumers that the Products

15  are made exclusively of cotton; (b) became part of the basis of the bargain to purchase

16  the Products when Plaintiff and other consumers relied on the representation; and (c)

17  created an express warranty that the Products would conform to the affirmation of

18  fact or promise. In the alternative, the representation is a description of goods which

19  was made as part of the basis of the bargain to purchase the Products, and which

20  created an express warranty that the Products would conform to the description.

21      83.    Plaintiff and members of the California Class reasonably and justifiably

22  relied on the foregoing express warranty, believing that the Products did in fact

23  conform to that warranty and were therefore made of only cotton.

24      84.    Defendants have breached the express warranties made to Plaintiff and

25  members of the California Class because the Products are not 100% cotton.

26      85.    Plaintiff and members of the California Class paid a premium price for

27  the Products but did not obtain the full value of the Products as represented. If Plaintiff

28  and members of the California Class had known of the true nature of the Products,

they would not have been willing to pay the premium price associated with them. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

### FIFTH CLAIM
### Breach of Implied Warranty of Merchantability
### Cal. Com. Code § 2314
### (On Behalf of Plaintiff and California Class)

86.    Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

87.    California's implied warranty of merchantability statute provide that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

88.    California's implied warranty of merchantability statute also provide that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

89.    Defendants are merchants with respect to the sale of, among other things, bedding products, including the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

90.    By advertising the Products as "100% Cotton," Defendants have made an implied promise on the label of the Products that the Products contain only cotton, and no other materials. However, the Products contain 100% polyester filling. Plaintiff, as well as other consumers, did not receive the goods as impliedly warranted by Defendants to be merchantable. Therefore, the Products are not merchantable under California law and Defendants have breached their implied warranty of merchantability in regard to the Products.

91.    If Plaintiff and members of the California Class had known that the Products were falsely and deceptively advertised, they would not have been willing

to pay the premium price associated with the Products. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

## SIXTH CLAIM
### Unjust Enrichment / Quasi-Contract
### (On Behalf of Plaintiff and Nationwide Class; alternatively, on behalf of Plaintiff and the California Class)

92.     Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

93.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant. Alternatively, Plaintiff brings this claim individually and on behalf of the members of the proposed California Class.

94.     As alleged herein, Defendants have intentionally and recklessly made a false and misleading representation to Plaintiff and members of the Classes to induce them to purchase the Products. Plaintiff and members of the Classes have reasonably relied on the false and misleading representation and have not received all of the benefits promised by Defendants. Plaintiff and members of the proposed Classes have therefore been induced by Defendants' false and misleading representation about the Products, and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

95.     Plaintiff and members of the proposed Classes have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the proposed Classes.

96.     The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed Classes—i.e., Plaintiff and members of the proposed Classes did not receive the full value of the benefit conferred upon Defendants. Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them.

97.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the proposed Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their false, deceptive, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Class(es), respectfully request that the Court enter judgment in Plaintiff's favor and against Defendants as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.    A declaration or declaratory judgment that Defendants' conduct has violated and continues to violate the statutes and laws cited herein;

C.    An order enjoining Defendants from the acts and practices cited herein and to undertake an immediate public information campaign to inform members of the Classes as to Defendants' prior practices;

D.    An order requiring imposition of a constructive trust and and/or disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiff and members of the Classes to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice;

E.    An award of damages, including all available statutory and punitive damages, pursuant to the statutes and the causes of action pled herein;

F.    Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and applicable, to prevent Defendants from retaining the benefit of their wrongful conduct;

CLASS ACTION COMPLAINT

G.    An award of all recoverable costs and expenses, including reasonable fees for Plaintiff's attorneys; and

H.    An award of pre- and post-judgment interest to Plaintiff and members each of the Classes if applicable; and, ordering further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all causes of action so triable.

DATED: June 27, 2023                         **TREEHOUSE LAW, LLP**

                                             By: _/s/ Benjamin Heikali_

                                             Benjamin Heikali (SBN 307466)
                                             Ruhandy Glezakos (SBN 307473)
                                             Joshua Nassir (SBN 318344)
                                             10250 Constellation Blvd., Suite 100
                                             Los Angeles, CA 90067
                                             Telephone: (310) 751-5948
                                             bheikali@treehouselaw.com
                                             rglezakos@treehouselaw.com
                                             jnassir@treehouselaw.com


                                             *Attorneys for Plaintiff and the*
                                             *Putative Classes*

Vinesign Document ID: 2DAD712C-C283-4E02-A242-42F8104C56BB

## <u>Venue Declaration Pursuant to Cal. Civ. Code 1780(d)</u>

I, Anna Stock, declare as follows:

1.      I am the named Plaintiff in the above-captioned action and a citizen of the State of California. I have personal knowledge of the facts set forth in this declaration, and am competent to testify to the same. The matters set forth herein are true and correct to the best of my knowledge and belief.

2.      I believe that the Central District of California is the proper place for trial of this case because Los Angeles County, the county in which I purchased one of the Products, is in this District.

I declare under penalty of perjury that the foregoing is true and correct, executed on _____06/27/2023_____ in Northridge, California

_____
Anna Stock